"MURPHY'S LAW: A rule originated by engineers that states, 'If something can go wrong, it will.' An addition to this law reads, 'and usually at the worst time.' "
Hirsch, Kett, Trefil, The Dictionary of Cultural Literacy, WhatEvery American Needs to Know, 71-72 (Houghton Mifflin Company 1988).
Rose M. Sanders and Chestnut, Sanders, Sanders, Turner, Williams and Pettaway, P.C. ("the law firm"), appeal from an order of the Circuit Court of Mobile County denying their Rule 55(c), A.R.Civ.P., motion to set aside a default judgment entered against Sanders and the law firm in a legal service liability action filed by Marie P. Weaver. The summons and the complaint in the legal service liability action were served on July 6, 1990. On August 8, 1990, Weaver moved for a default judgment, based upon the failure of Sanders and the law firm to appear, plead, or otherwise defend. Default was entered by the clerk on August 19, 1990, and a default judgment for $691,426.58 was entered in Weaver's favor and against Sanders and the law firm on August 23, 1990. Twenty-seven days later Sanders and the law firm filed a Rule 55(c) motion to set aside the default judgment. The court denied that motion. We reverse and remand.
The gravamen of Weaver's complaint was that Sanders and the law firm had negligently permitted the dismissal of Weaver's federal action alleging race, sex, and age discrimination against her former employer, Olin Chemical Company.
Sanders and the law firm's motion to set aside the default judgment alleged that the judgment was void because Weaver had failed to withdraw her jury demand after Sanders and the law firm's default and because the damages were awarded by the court and not by a jury; that Sanders and the law firm were served with the summons and the complaint on July 6, 1990, and on that day forwarded them to their liability insurance carrier, who under the contract of insurance was obligated to defend Sanders and the law firm, but inadvertently failed to timely arrange for representation of Sanders and the law firm. The motion also alleged the following, which were designated as "meritorious defenses" to Weaver's action: *Page 1328 
 "Through no fault of [Sanders and the law firm], Ms. Marilyn Mooney, Sanders' legal secretary acted beyond the line and scope of her employment and without the knowledge of either [Sanders or the law firm], and thereby caused Sanders to be unaware of rulings and orders of the Court relating to Sanders' representation of [Weaver] in Marie P. Weaver v. Olin Corp., Civil Action Number 87-1311-AH-M (S.D.Ala.) ('the Federal Court action'); the suit upon which the [malpractice] action . . . is based.
 "Additionally, the grounds upon which the Federal Court Action was brought failed to state a claim upon which relief could have been granted in that:
 "Sex and age discrimination are not actionable under 42 U.S.C. § 1981;
 "Disparate treatment in the termination of employees is not actionable under 42 U.S.C. § 1981;
 "Plaintiff's claim for promotion is not actionable under 42 U.S.C. § 1981;
 "Plaintiff's claim brought pursuant to Title VII of the Civil Rights Act of 1964 is barred as untimely; and
 "Plaintiff's claim of discrimination is otherwise without merit.
 "The damages awarded by the Court herein are excessive, and [Sanders and the law firm] have a meritorious defense to said damages or in mitigation thereof."
The motion further alleged that Weaver would not be prejudiced by the setting aside of the default judgment and the adjudication of this action on its merits because this would not impede, frustrate, or otherwise delay Weaver's efforts to recover and would not cause her to incur additional costs; and, the motion alleged, adjudication on the merits would not result in any loss of evidence, would not hinder discovery, and would not cause Weaver to suffer any substantial prejudice.
Although Rule 55(c), A.R.Civ.P., vests the trial court with discretion in ruling on a Rule 55(c) motion, Article I, §§ 6, 10, and 13, of the Alabama Constitution of 1901 requires that a trial court exhibit a large and liberal discontent against adjudication of rights by default. This policy has been expressed in Kirtland v. Fort Morgan Authority Sewer Service,524 So.2d 600, 604 (Ala. 1988), as "this state's commitment to protect an individual's right to attain an adjudication on the merits and to afford litigants an opportunity to defend," and likewise has been expressed in Jones v. Hydro-Wave of Alabama,Inc., 524 So.2d 610, 613 (Ala. 1988): "[A] trial [court], in exercising [its] discretion under Rule 55(c), must begin with the presumption that a litigant has a paramount right to defend on the merits and that, therefore, the cases should be resolved on the merits whenever practicable."
This Court has developed a three-factor analysis for reviewing orders denying Rule 55(c) motions in cases that fall "in the expansive area between the two extremes — one extreme characterized by the presentation of a clearly frivolous defense or no defense at all and by intentional and flagrant abuse of procedural rules, which come together to warrant disposition of the case by default judgment, and the other extreme characterized by inadvertent oversight coupled with an obviously meritorious defense, which come together to warrant disposition by trial." Kirtland, 524 So.2d at 605.
In reverse order from the order in which they were presented in Kirtland, these three factors are:
(1) Culpability and the defaulting party's conduct:
Negligence by itself is insufficient for refusing to grant a Rule 55(c) motion. A reasonable explanation for inaction and noncompliance may preclude a finding of culpability and cause this Court to reverse a trial court's refusal to set aside a default judgment, if the other two factors are satisfied. SeeEx parte Illinois Central Gulf R.R., 514 So.2d 1283, 1288
(Ala. 1987); Kirtland, 524 So.2d at 608.
Sanders and the law firm forwarded the summons and the complaint to their insurance carrier the day they received them. In keeping with Murphy's Law, the claims adjuster (who had been handling the problems for Sanders and the law firm that *Page 1329 
had resulted from acts and omissions of Sander's legal secretary that had occurred because of what Sanders and the law firm describe as the secretary's obsessive, compulsive personality) was away from the office for several weeks, and the summons and the complaint in the Weaver suit were placed on his desk. The claims adjuster was in the process of obtaining a divorce from his wife, who was being treated for depression; he was looking after his three minor children, one of whom was being treated for emotional problems, one of whom was being treated for a learning disability, and one of whom, a five-year-old, was being treated for a severe asthmatic condition; and his department was being reorganized and his job duties were being changed. He did not find the summons and the complaint until after the default judgment had been entered. The default was attributable not to willful disregard of court rules, but to negligence. Reasonable explanations for defaults, such as attorney neglect (Ex parte Illinois Central Gulf R.R., supra) and liability insurance company neglect (Lee v. Martin,533 So.2d 185 (Ala. 1988)), attributable to innocent inadvertence, militate in favor of a finding of an absence of culpability and provide a basis for setting aside a default judgment. Kirtland, 524 So.2d at 607-08.
(2) Absence of prejudice to the nondefaulting party:
Prejudice must be substantial to justify a denial of a Rule 55(c) motion to set aside a default judgment. Kirtland, 524 So.2d at 606-07. Delay alone is not sufficient prejudice; the delay must result in loss of evidence, create increased difficulties in discovery, or provide greater opportunity for fraud. There is nothing to show that Weaver would be prejudiced in any substantial way by setting aside her default judgment. The absence of prejudice provides a basis for setting aside the default judgment, even if the trial court requires the defaulting defendants (Sanders and the law firm) to reimburse the plaintiff (Weaver) for reasonable expenses caused by the granting of the Rule 55(c) motion.
(3) A meritorious defense: This Court explicitly defined the word "meritorious" in Kirtland, supra, and, in doing so, removed much of the broad discretionary authority vested in a trial court under Rule 55(c):
 "The defense proffered by the defaulting party must be of such merit as to induce the trial court reasonably to infer that allowing the defense to be litigated could foreseeably alter the outcome of the case. To be more precise, a defaulting party has satisfactorily made a showing of a meritorious defense when allegations in an answer or in a motion to set aside the default judgment and its supporting affidavits, if proven at trial, would constitute a complete defense to the action, or when sufficient evidence has been adduced either by way of affidavit or by some other means to warrant submission of the case to the jury."
Kirtland, 524 So.2d at 606.
The federal court action (the underlying action) was dismissed on September 30, 1988; therefore, this action was governed by the Alabama Legal Services Liability Act, Ala. Code 1975, §§ 6-5-570 through 6-5-581.
Section 6-5-580 reads, in pertinent part, as follows:
 "In any action for . . . damages . . ., whether in contract or in tort, against a legal service provider, the plaintiff shall have the burden of proving that the legal service provider breached the applicable standard of care. The applicable standard of care shall be as follows [in the case at issue]:
 "(1) The applicable standard of care against the defendant legal service provider shall be such reasonable care and skill and diligence as other similarly situated legal service providers in the same general line of practice in the same general area ordinarily have and exercise in a like case."
Section 6-5-579 reads, in pertinent part, as follows:
 "(a) If the liability to damages of a legal services provider is dependent in whole . . . upon the resolution of an underlying action [as it was in the case at *Page 1330 
issue], the outcome of which is either in doubt or could have been affected by the alleged breach of the legal services provider standards of care, then, in that event, the court shall upon the motion of the legal services provider, order the severance of the underlying action for separate trial.
 "(b) In defense of the underlying action, the legal services provider may assert any and all substantive and procedural defense, restriction, limitation or immunity which could have the effect of limiting, mitigating, reducing or avoiding liability or damages."
(Emphasis added.) Section 6-5-572(5) defines "underlying action" as follows:
 "(5) UNDERLYING ACTION. The term underlying action refers to the legal matter concerning the handling of which it is alleged that the legal services provider breached the applicable standard of care. The term is applicable in legal service liability actions in which the legal service provider's liability is dependent in part upon or derived from the legal service provider's acts or omissions concerning the handling of the underlying action."
It is obvious from a review of the Alabama Legal Services Liability Act that the Act did not change the case law involving a plaintiff's burden of proof in a legal service liability action based on an allegation of negligence in handling an underlying action. As in legal malpractice actions that arose prior to the effective date of the Alabama Legal Services Liability Act (April 12, 1988), a plaintiff must introduce evidence (that would be sufficient to withstand a motion for summary judgment or a motion for a directed verdict) that in the absence of the alleged negligence, the outcome of the underlying case would have been different. Moseley v. Lewis Brackin, 533 So.2d 513, 515 (Ala. 1988); Johnson v. Horne,500 So.2d 1024, 1026 (Ala. 1986); Hall v. Thomas, 456 So.2d 67, 68
(Ala. 1984).
We have reviewed the defenses to Weaver's underlying action set forth in Sanders and the law firm's motion to set aside the default judgment, and we have reviewed the last amended complaint in the underlying action. We cannot say that these defenses are clearly frivolous defenses or no defenses at all, nor can we say that they are obviously meritorious defenses that will assuredly warrant disposition by trial or disposition in Sanders and the law firm's favor. However, we can say, based upon Sanders and the law firm's brief filed with this Court, that some of these defenses may be defenses as a matter of law that would entitle Sanders and the law firm to a summary judgment or to a directed verdict in the trial of the underlying action. Likewise, one of the defenses set forth in the Rule 55(c) motion and supported by the affidavit of Sanders may warrant submission of the underlying action to a jury. Be that as it may, we find sufficient evidence "to reasonably infer that allowing the defense[s] to be litigated could foreseeably alter the outcome of the case." Kirtland, 524 So.2d at 606. Therefore, we hold that the trial court abused its discretion in denying Sanders and the law firm's Rule 55(c) motion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES and KENNEDY, JJ., concur.
MADDOX, J., concurs in the result.